IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
YAMICIA CONNOR,                )
                               )
          Plaintiff,           )
                               )
     v.                        )      1:23CV1044
                               )
UNC HEALTH CARE SYSTEM,        )
                               )
          Defendant.           )
```

## MEMORANDUM ORDER

Before the court is the "Partial Motion to Dismiss Plaintiff's Amended Complaint" by UNC Health Care System ("UNC"). (Doc. 11.) The United States Magistrate Judge filed a Recommendation in accordance with 28 U.S.C. § 636(b) and served it on the parties. (Docs. 19, 20.) UNC timely objected to the Recommendation (Doc. 21), as did Plaintiff Yamicia Connor (Doc. 22). Each party has responded to the other's objection. (Docs. 23, 24.) For the reasons set forth below, UNC's objection will be sustained in part and overruled in part, Connor's objection will be overruled, and the Recommendation as modified will be adopted.

I.  BACKGROUND

The facts alleged in the 188-paragraph amended complaint (hereinafter the "complaint") are set forth in the Recommendation and need not be repeated here. In short, Connor alleges that as a black, Hispanic first-and-second-year female fellow in UNC's gynecology-oncology fellowship program in 2022, she was

discriminated against based on race, sex, and disability. (Doc. 8 ¶¶ 6, 9, 100; see generally Doc. 8, Doc. 8-1.)  After her employment was terminated in November 2022, she filed a charge with the Equal Employment Opportunity Commission ("EEOC") in December 2022 alleging discrimination by two of her supervisors based on race, sex, disability, and "parental status."  (Doc. 8-1 at 2, 3.)  After receiving her right to sue letter (Doc. 8 ¶ 135), this lawsuit followed.  Connor asserts claims for retaliation under the Family Medical Leave Act (First Claim for Relief), discrimination under the Americans with Disabilities Act (Second Claim for Relief), sex discrimination under Title VII (Third Claim for Relief), retaliation based on her complaints of sex and race discrimination, in violation of Title VII (Fourth Claim for Relief), race discrimination under Title VII (Fifth Claim for Relief), and retaliation in violation of 42 U.S.C. § 1981 (Sixth Claim for Relief).[1]

## II. ANALYSIS

### A. UNC's Objections

UNC asserts the Recommendation errs in three ways: (1) in concluding that Connor exhausted her administrative remedies related to her Title VII claims based on co-worker harassment (Doc. 21 at 2); (2) in concluding that Connor had sufficiently alleged

---

[1] Connor has voluntarily dismissed her § 1981 claim.  (Doc. 15.)

a hostile work environment claim based on race or sex (id. at 11); and (3) in concluding that Connor had sufficiently pleaded "disparate treatment based [on] a protected characteristic under Title VII," (id. at 15).  Each ground will be addressed in turn.

### 1.  Co-worker Harassment and Administrative Exhaustion

UNC argues first that the complaint's claims based on racial comments by Connor's co-workers are not properly before the court because they were neither set out in the EEOC charge nor reasonably related to the claims made in the charge, which referenced only supervisory wrongdoing.  (Id. at 2-3.)  UNC focuses on Connor's claim for a hostile work environment based on race, see id., which the complaint includes within her claim for race discrimination more broadly, see Doc. 8 at 36-37.  Connor responds that any claims based on co-worker harassment are properly before the court because they are "reasonably related" to the EEOC charge and/or would have been developed by a reasonable investigation of the charge.  (Doc. 24 at 9-10.)

"[T]he scope of the plaintiff's right to file a federal lawsuit is determined by the [EEOC] charge's contents." Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012) (quotation marks and citation omitted).  "Thus, 'a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit.'"

3

Id. (alteration in original) (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005)).  Nevertheless, "so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she 'may advance such claims in her subsequent civil suit.'" Id. at 594 (emphasis added) (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)).[2]

Connor's EEOC charge begins with this statement: "I believe that I was subject to discrimination by my mentor, Dr. Wendy Brewster, Professor, Gynecologic Oncology & Director, UNC Center for Women's Health Research, and Fellowship Director Dr. Victoria Bae-Jump." (Doc. 8-1 at 3.)  It describes the birth of Connor's twin children on June 2, 2021, and states that she took two weeks off in February 2022 for one child's surgery.  "Upon returning [from leave for her son's surgery]," she states, "I began to notice subtle changes in the behavior of my senior co-fellows towards me. For example, they began to obsessively check my work and accused me of doing things that I had not done." (Id.)  She further states that three months later, "I did notice that my co-fellows and others were very standoffish and cold towards me." (Id. at 4.)

---

[2] The Recommendation correctly states and analyzes the exhaustion contention under the well-known standard of Federal Rule of Civil Procedure 12(b)(6), although the footnote misstates the standard in the parenthetical to EEOC v. 1618 Concepts, Inc., 432 F. Supp. 3d 595, 601 (M.D.N.C. 2020), as applying Rule 12(b)(1).  (Doc. 19 at 9 n.2.)

4

Case 1:23-cv-01044-TDS-JLW   Document 25   Filed 03/06/25   Page 4 of 16

The remainder of the three and one-quarter page rendition of her allegations makes no reference to any conduct by her co-fellows. (See id. at 3-6.) Rather, the EEOC Charge is specifically limited to allegations involving conduct of, and treatment by, her two supervisors.

The complaint, in contrast, includes eight paragraphs detailing the wrongdoing of Connor's "white and non-disabled co-fellows." (Doc. 8 ¶¶ 35-40, 46, 48.)[3] It alleges that these co-fellows "obsessively check[ed] [Connor's] work and falsely accuse[d] [Connor] of doing things that were untrue." (Id. ¶ 35.) The complaint goes further, however. It includes allegations of race-related communications by Connor's co-fellows. (Doc. 8 ¶¶ 36-40, 46.) According to these allegations, the co-fellows made derogatory comments about black physicians, such as text messages referring to black female physicians as "undeserving," concluding that a black physician "hasn't learned the job, but she has done a ton of DEI" and "has totally skated by bc she does all this diversity work and founded white coats black doctors so it[']s like no one realizes she sucks," describing a black physician as "special" in a pejorative sense and another as "woof," a black male colleague as "ass," "big dick," "bro," and "the worst," and

---

[3] The complaint's ADA claim rests on claims of failure to accommodate; there is no allegation of hostile work environment based on disability. (Doc. 8 ¶¶ 151-62.)

5

a black female department head as "bizarre," "embarrassing," "an idiot," and "clueless." (Id. ¶¶ 36, 38.)

UNC is correct that the complaint's claim for a racially hostile work environment is not reasonably related to the EEOC charge, nor would it have been developed by a reasonable investigation into the charge.

First, the wrongdoers are different. The complaint includes eight paragraphs of alleged misconduct by Connor's "white and non-disabled co-fellows" (Doc. 8 ¶¶ 35-40, 46, 48). The EEOC charge, by contrast, contains no allegations that can be construed to even suggest that the co-workers were engaging in a hostile work environment based on a protected ground. As its first paragraph foreshadows, it details "discrimination by [her] mentor, Dr. Wendy Brewster . . . and Fellowship Director Dr. Victoria Bae-Jump." (Doc. 8-1 at 3-6.) No similar assertion is made against the co-fellows. (See generally Doc. 8-1.) It is difficult to read the EEOC charge, with its passing references to Connor's co-fellows against its extensive discussion of her supervisors' actions, and reasonably conclude that Connor accused the co-fellows of any legally cognizable wrongdoing.

Second, the co-fellows' actions are different. Connor's EEOC charge references "subtle changes in the behavior of [her] senior co-fellows towards [her]," states her co-fellows "began to excessively check [her] work and accused [her] of doing things

6

that [she] had not done," and describes them as "standoffish and cold towards [her]." (Doc. 8-1 at 3, 4.) The complaint's factual allegations of the hostile work environment repeats the assertion that the co-fellows "obsessively check[ed] Plaintiff's work and falsely accus[ed] Plaintiff of doing things that were untrue" (Doc. 8 ¶ 35), but the basis of her hostile work environment claim focuses on what she now alleges are racially-charged texts and comments in violation of law – none of which was even alluded to in the EEOC charge, (id. ¶¶ 36-40).

Third, the discriminatory motivations of the co-fellows are different. The EEOC charge's reference to co-fellows focuses on their response to Connor's medical conditions and parental status. It explains that her co-fellows began obsessively checking her work after her leave of absence to care for her son, and later that they were "standoffish and cold" toward her "because of [her] medical issues." (Doc. 8-1 at 3, 4.) The complaint's references to the co-fellows, by contrast, focus on racially-biased communications. (Doc. 8 ¶¶ 36-40.)

The disjunction between wrongdoer, actions, and motivation brings this case close to Chacko, 429 F.3d 505, cited by UNC, and not Sydnor, 681 F.3d 591, and Smith, 202 F.3d 234, as urged by Connor. The EEOC charge failed to provide UNC with adequate notice and opportunity to voluntarily correct a hostile work environment due to race-related comments by Connor's co-fellows. Nor would

7

any reasonable agency investigation into the charge's allegations have developed that claim. The charge claimed misconduct by Connor's supervisors and leveled absolutely no claim of unlawful Title VII conduct by the co-fellows. As such, the charge did not make it likely that any agency-driven conciliation would resolve any race-based discrimination by the co-fellows. See Chacko, 429 F.3d at 510 (noting that the purposes of the exhaustion requirement are (1) notice and an opportunity for the alleged offender to voluntarily correct and (2) conciliation through agency-monitored settlement).

Connor therefore did not exhaust her administrative remedies as to any claim of hostile work environment based on race-based discrimination by her co-fellows. Because such a claim was not exhausted, it is not properly before the court.

At least at this stage, however, the court is unconvinced that the allegations of race-based comments by Connor's co-fellows cannot be considered in connection with Connor's exhausted claim against her two supervisors. The result of a failure to exhaust administrative remedies is the dismissal of claims. See Chacko, 429 F.3d at 513 ("We have generally dismissed any claims in which the plaintiff has not exhausted his administrative remedies before bringing suit."). Yet the underlying factual allegations may potentially be relevant for exhausted claims. Keener v. Universal Companies, Inc., 128 F. Supp. 3d 902, 915 (M.D.N.C. 2015)

8

("Although this court has found that Plaintiff has not exhausted her hostile work environment claim, these allegations could nonetheless possibly serve as evidence to support her properly asserted sex discrimination claim."). As discussed below, the court is unable to say at this early stage that those allegations cannot be relevant to Connor's plainly exhausted claim of race discrimination by her supervisors, which will depend on the development of the facts for that claim. UNC's first objection is therefore sustained to the extent that Connor's race-based hostile work environment claim will be dismissed.

### 2. Sex-Based Hostile Work Environment Claim

UNC argues that Connor has failed to adequately plead a hostile work environment claim based on sex because (1) any misconduct was not sufficiently severe or pervasive to amount to a hostile work environment and (2) even if there was misconduct, none was due to Connor's protected characteristics. (Doc. 21 at 11-14.) Connor responds that the mistreatment alleged, especially mistreatment from superiors, was sufficiently severe to state a hostile work environment claim. (Doc. 24 at 14-16.) She further responds that she has alleged misconduct based on a protected characteristic — her sex — because she has been discriminated against based on her status as a mother. (Id. at 17-18.)

To adequately plead a hostile work environment claim, a plaintiff must allege "(1) unwelcome conduct; (2) that is based on

9

the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc) (citation omitted).  Whether the environment is sufficiently severe or pervasive is based on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. (citation omitted).

The court agrees with Connor that she has pleaded a plausible hostile work environment claim as part of her claim for sex discrimination in violation of Title VII (Third Claim for Relief). Connor alleges a deterioration in the workplace due to her status as a new mother.  (Doc. 8 ¶¶ 33-35, 41-44, 46, 48, 49-50, 53, 54.) Connor alleges her mentor scolded her for not having the "bandwidth" for the job given her status as a new mother (id. ¶ 41), and that she later was restricted from using the bathroom until certain tasks were completed, which resulted in her soiling her clothes with menstrual blood such that her husband had to bring her new clothing, (id. ¶ 54).  See Boyer-Liberto, 786 F.3d at 284 (explaining that "an employee will have a reasonable belief that a hostile work environment is occurring based on an isolated

10

incident if that harassment is physically threatening or humiliating").

UNC argues that Connor has not linked any misconduct to a protected characteristic and contends that allegations regarding UNC's responses to Connor's need to care for her son do not amount to sex-based discrimination. (Doc. 21 at 12 (citing Piantanida v. Wyman Ctr., 116 F.3d 340, 342 (8th Cir. 1997).) The out-of-circuit precedent cited in support, however, answered a different, "narrow question": "whether being discriminated against because of one's status as a new parent is 'because of or on the basis of pregnancy, childbirth, or related medical conditions,' . . . and therefore violative of the [Pregnancy Discrimination Act]." Piantanida, 116 F.3d at 342. In any event, Connor alleges more than just discrimination based on her status as a parent. She alleges her mentor told her she did not have the "bandwidth" for the fellowship because "she was a new mom with twins under a year old." (Doc. 8 ¶ 41 (emphasis added).) At the Rule 12(b)(6) stage, the court is obliged to "accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and must draw all reasonable inferences in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Under this standard, the complaint plausibly alleges that Connor was subjected to a hostile work environment because of her status as a mother rather than simply as a parent, and thus

11

ties the allegations of mistreatment to her sex. Cf. Phillips v. Martin Marietta Corp., 400 U.S. 542, 543-44 (1971) (per curiam) (concluding that a corporation's use of one hiring policy for women with preschool-age children and another policy for men with preschool-age children would violate antidiscrimination law). UNC's second objection will therefore be overruled.

### 3. Race and Sex Discrimination Claims

UNC argues next that Connor has failed to adequately plead any claim for discrimination based on a protected characteristic under Title VII. (Doc. 21 at 15-18.) It argues that Connor's discrimination claims are based on disparate treatment between her and her non-black, male co-workers and that her alleged co-workers cannot serve as appropriate comparators because they did not commit the same or sufficiently similar infractions as Connor. (Id.) Connor responds that she has listed specific examples of white and male co-workers "engag[ing] in the same actions" as her but being treated more favorably, and points to comments regarding race and sex she overheard or received. (Doc. 24 at 18-22; Doc. 8 ¶¶ 81-84.) Connor notes she has also alleged (1) she was informed her mentor has a reputation for singling out black fellows for discipline; (2) that she was disciplined and ultimately terminated based on false accusations against her; and (3) that she was subject to racially hostile comments by her co-workers. (Doc. 24 at 20-21.)

12

In order to state a claim for discrimination based on a protected characteristic in violation of Title VII, a plaintiff must "allege facts to satisfy the elements of the cause of action created by that statute." McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015). Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

The court concludes that, when considering the allegations in the light most favorable to her, Connor has sufficiently alleged racial discrimination in violation of Title VII. In particular, she alleges that "[i]n discussions with program leadership about this hostility, Plaintiff was informed by a supervising physician that her mentor had a reputation for targeting and singling out black fellows for discipline." (Doc. 8 ¶ 45.) She further alleges the assertions against her in the letter of deficiency were demonstrably false, and that her supervisors refused to consider any of her evidence contrary to those assertions. (Id. at ¶¶ 68-70, 72-75.) Connor also alleges that she told her supervisors about the "hostile work environment" created by her co-workers, including their racialized comments. (Id. ¶ 48-50, 53.) Her

13

supervisors shortly thereafter allegedly relied on the accusations of those coworkers in drafting the letter of deficiency, id. ¶ 72, despite being on notice of their possible race-based animus toward Connor.[4]

UNC's objection asserts only that the race discrimination claim fails because Connor failed to sufficiently allege appropriate comparators, without addressing Connor's other allegations supporting a race discrimination claim more broadly. (See Doc. 21 at 15-18.) Because the court concludes that Connor has met her burden to "allege a plausible claim for relief," McCleary, 780 F.3d at 587 (emphasis in original), it need not address whether her allegations of co-fellow comparators are sufficient at this stage.

UNC's objection will therefore be overruled as it relates to Connor's claim for racial discrimination in violation of Title VII (Fifth Claim for Relief). For the reasons given in the court's discussion of the sex-based hostile work environment allegations, the objection will also be overruled as to her claim for sex discrimination in violation of Title VII (Third Claim for Relief).[5]

---

[4] As noted earlier, although the allegations regarding Connor's co-fellow's racialized remarks cannot support an unexhausted hostile work environment claim, they may be considered for the exhausted claim of race discrimination by her supervisors. Keener, 128 F. Supp. 3d at 915.

[5] UNC is correct that Title VII does not protect against discrimination based on disability. See 42 U.S.C. § 2000e-2(a)(1). (Doc. 21 at 15 n.1.) In considering the viability of any Title VII claims, the

14

Case 1:23-cv-01044-TDS-JLW    Document 25    Filed 03/06/25    Page 14 of 16

### B. Connor's Objection

Connor argues that the Recommendation erred in concluding that she had failed to exhaust her administrative remedies regarding her Title VII retaliation claim (Fourth Claim for Relief) before filing this lawsuit. (See generally Doc. 22.) Having considered the parties' arguments on this point and conducted a de novo review, the court agrees with the Recommendation. (See Doc. 19 at 11-13.) Connor's objection is therefore overruled.

## III. CONCLUSION

The court has conducted a de novo review of the portions of the Recommendation to which objections have been made and is in partial accord with it. The court therefore adopts the Recommendation except as set out herein.

IT IS ORDERED that UNC's objections (Doc. 21) are SUSTAINED IN PART and OVERRULED IN PART and that:

UNC's motion to dismiss (Doc. 11) Connor's claims for a race-based hostile work environment based on allegations of co-worker harassment (to the extent alleged in the Fourth, Fifth, and Sixth Claims for Relief), for failure to exhaust administrative remedies, is GRANTED, and those claims are DISMISSED;

UNC's motion to dismiss Connor's hostile work environment

---

Recommendation incorrectly stated that "Plaintiff has plausibly alleged she is a member of two protected groups based on her race and disability." (Doc. 19 at 16.) Therefore, the court did not consider disability status in its de novo consideration of Connor's Title VII discrimination claims.

15

claim based on sex discrimination (Third Claim for Relief) is DENIED;

UNC's motion to dismiss Connor's Title VII discrimination claims (Third and Fifth Claims for Relief) is DENIED;

IT IS FURTHER ORDERED that Connor's partial objection (Doc. 22) is OVERRULED and that:

UNC's motion to dismiss Connor's Title VII retaliation claim (Fourth Claim for Relief) for failure to exhaust administrative remedies is GRANTED and that claim is DISMISSED.

/s/   Thomas D. Schroeder
United States District Judge

March 6, 2025